Tilghman C. J.
The facts in this case are few and undisputed. The mother of Eliza was a slave, the property of James Corse, of Maryland. She absconded from her master, and came to this state, in which, after a residence of about two years, her child, Eliza, was born. The question^, therefore, is, whether birth in Pennsylvania gives freedom to the child of a slave who had absconded from another state, before she became pregnant. This question depends upon the law of Pennsylvania and the constitution of the United States. On the 1st March, IT80, the state of Pennsylvania passed an act “ for the gradual abolition of slavery,” by the third section of which, it is enacted, “ That, all servitude for life, “ or slavery of children, in consequence of the slavery of *306 “their mothers, in the case of all children born within this “ slate, from and after the passing of this act, shall be utu ter]y taken away, extinguished, and for ever abolished.” The fifth section directs the manner in which the owners of slaves should enter them in a public register, and the tenth section declares “That no man, or woman, of any nation, ex- “ ceptthe negroes or mulattoes who shall be registered, as afore- “ said, shall, at any time hereafter, be deemed, adjudged, or “holden, within the territories of this Commonwealth, as “ slaves or servants for life, but as free men and free women, “ except the domestic slaves attending upon delegates in con- “ gress from the other American states, foreign ministers, “ and consuls,” and with certain other exceptions, not affecting the present case. Thus far the act is too clear and too positive to admit of a doubt, nor can it be denied that the state of Pennsylvania had a right to give freedom to every person within her territory, however impolitic the extreme-exercise of that right might have been, considering the situation of some of her sister states. But the situation of those states was neither unthought of nor neglected. Accordingly, we find it provided by the 11th section, “ That the said act, 4t or any thing contained in it, should not give any relief or e< shelter to any absconding or run-away negro or mulatto „ “ slave or servant, who had absented himself, or should ab- “ sent himself from his, or her, owner, master, or mistress, “ residing in any other state or county, but such owner, mas- “ ter, or mistress, should have like right and aid to demand, a claim, and take away his slave or servant, as he might have “ had in case the said act had not been made.” The termt of this proviso do not extend to the issue of the absconding slave, por is there any necessary implication-by which it must be extended to issue begotten and born in Pennsylvania. It appears to me, therefore, that, under the act of assembly, this child is entitled to freedom. I desire it, however, to be understood, that it is not intended to intimate any opinion on the case of children of domestic slaves, attending upon members of congress, foreign ministers, or' consuls, nor on the case of a child, with which a slave "absconding from another state, should be pregnant at the time when she came into this state. All that need to be said at present is, that these cases are distinguishable from'the one now decided, and may, perhaps, be found to turn on different principles. *307 But the constitution of the United States has been relied on in opposition to the act of assembly, and if there be a repugnancy, there is no doubt but the act of assembly must give way. This constitution was formed upwards of seven years after the passing of the act of assembly. By that time, the operation of the act had been fully experienced by the slave-holding states. It was a subject on which their feelings had been excited, and therefore we must presume that their representatives, in the General Convention of 1787, regarded this important object with vigilant attention. Neither can it be supposed that Pennsylvania and the eastern states were inattentive to what had always been deemed, by them, a matter of importance; so that it is a case in which there are peculiar reasons for adhering to the words of the constitution. The subject is introduced in the 2d section of the 4th article, which is expressed as follows: “ No person, held “ to service or labour, in one state, under the laws thereof, “ escaping into another, shall, in consequence of any law or “ regulation thereof, be discharged from such service or la- “ bour, but shall be delivered up on claim of the party to “which such service or labour may be due.” This is in conformity with the law of Pennsylvania. The case of the absconding slave, is provided for, without mention of the issue. I see not upon what ground the constitution can be extended beyond the act of assembly, nor does it appeal- that, in the opinion of Congress, it can be extended further: for, in the “ Act respecting fugitives from justice, and persons “escaping from the service of their masters,” (passed 12th february, 1793,) there is no provision, except in case of persons held to labour in one of the United States, xvho shall escape into another of the said states. I am, therefore, of opinion, that, under the act of assembly of this state, and the constitution of the United States, the child Eliza was born free.
Yeates J.
The words of the 3d section of the act of the 1st March, 1781, are general and comprehensive, and include the cases of all children of slaves who should be born within the state after that day. “ They shall not be deemed “ and considered as servants for life, or slaves.” The expressions are strong and imperative, and cannot be got over. Where the meaning of the terms used by the legislature is *308 plain, we are bound to adhere to it, and not to transpose their words, or insert others, unless the result would involve us in palpable absurdity or gross injustice.
Whatever may be our ideas of the rights of slave holders, in our sister states, we cannot deny that it was competent to the legislature to enact a law ascertaining the freedom of the issue of slaves born after the passage of the act, within this state. The only question left to be considered, is, whether there is any thing in the constitution of the United States, or in any act of congress, passed in pursuance thereof, which controuls or abridges the operation of our state law, in its plain and literal sense.. The convention who formed the federal compact, had the Whole subject of slavery before them, and we well know the prejudices and jealousies of the southern parts of the union, as to their property in slaves. It was no easy task to reconcile the local interests and discordant prepossessions of the different sections of the United States; but the business was accomplished by acts of concession and mutual condescension. The constitution of the United .States, in art. 4. sect. 2. goes no further than to provide that persons held to service, or labour, in one state, under the laws thereof, escaping into another state, shall not be discharged from such service or labour, but shall be delivered up. And the act of congress, of the 12th February, 1793, points out the mode by which fugitive slaves shall be restored to their former masters in another state. It cannot be supposed, foy a moment, that- the child in question, who was not in existence when her mother ran away, «had escaped, or was a fugitive. Her case, therefore, is not embraced, either by the constitution of the United States, or by the act of congress. It irresistably follows, that negro Eliza is not a slave. . At the same time, it is to be fully understood, that my opinion goes no further than the case now before us. The children of a female .slave, of foreign ministers, or of the members of congress of other states, which may be born amongst us, are not included therein. It will be time enough to decide those particular cases when they shall occur, and come before us for our determination.
Gibson J.
The case of the relater is embraced by the letter of the third section, and certainly does not fall within any éf the exceptions of the tenth section of the act of March 1, *309 1?80. By the provisions of’either, she is indisputably free. It is not for us to conjecture what provision would have been made, if the present case had presented itself to the consideration of the legislature. An attempt to supply what this Court might consider deficient, would be an assumption of legislative 'authority. But the 10th section effectually guards against all construction unfavourable to the class of persons intended to be benefitted. If, even an equitable construction, in favour of the master, were not precluded, I am far from being satisfied that the present case would be proper for its exercise. The support of the relater has caused him neither trouble nor expense. He was, it is true, deprived of the service of the mother from the time she absconded. But this did not happen in consequence of any act of the relater, and gives him no claim on her. ’ Whether his case is to be considered a hard one or not, will depend much on the temper with which the mind may contemplate the positive and artificial rights of thex master over the mother on the one and, on the other, the natural rights of her child.