The opinion of the court was delivered by
Tiighman, C. J.
This was an action of Homine replegiando, and the single question is, whether the child of a servant until the age of twenty-eight years, can be held for the same period, and 'on the same conditions as its mother, who was the daughter of a-registered slave. It is a matter of importance, and has been very well argued. The case depends on' the act for the' gradual abolition of slavery, passed the 1st of March, 1780, and an.act to ex-, plain and amend the same, passed the 29th of March, 1788. If the argument in favour of servitude be correct, the legislature of Pennsylvania, though it abolished "slavery for life, established a kind of slavery, a servitude until the age of twenty-eight years, which may continue from generation to generation to the end of the world. This would be so contrary t.o the'general spirit of the act'of assembljq and of the time when it was passed, that it requires clear expressions to prove it. I will take a view of the act *444 of 17S0, several clauses of which must be considered together, as they throw light on each other. By the third section, all persons, as well negroes and mulattoes ás others, born thereafter, were to be deemed and considered not as servants for life, or slaves;, and all servitude for life, or slavery of children in consequence of the slavery of their mothers, in the case of all children born within this state, after the .passing o„f that act, was for ever abolished. The fourth section contains a provision,- that every negro and mulatto child, born within this .state after-the passing of this act as aforesaid (who would, in case this act had not been made, ’have been born a servant for years, or life, or a slaved) shall be deemed to be.,- and shall be, by'virtue of this act, .the servant of such person, or his or her assigns, who would in such case have been entitled to the Service of such child, until such child shall attain unto the age of twenty-eight years, in the same manner, and on the samé conditions whereon servants bound by indenture for four years are, or may 'be retained or holdenf’ but, in case the person to whom the 'service of any such child shall belong, shall abandon his or her claim to the 'same, the overseers of the poor shall, by indenture, bind the said child out as an apprentice, for a time not exceeding the age of twenty-eight years. By the fifth section, every person who is, or shall be, the owner of any negro or mulatto slave or servant for life, or. till the age of thirty-one years, now within this state, or his lawful attorney, shall, on or before the' 1st day of November.next, cause the said slave or servant to be registered in the manner therein prescribed, otherwise the said slave or servant, after the said first, day of November, is not to be deemed a slave or ser.vant for life, or till thirty-one years of age. By the tenth section, “no man or woman, of any nation or colour, except the negroes and mulattoes, who shall be registered as aforesaid, shall at any time hereafter be deemed, adjudged, or holden within the territories of this Commonwealth, as slaves or servants for life, but as free men and free women, except the domestic slaves attending upon members of congress, foreign ministers and consuls,,” &c.t &c. These are .the points of the law most material to' the present question, from which several principles may be deduced. 1st. That the legislature, anxious as it was to abolish slavery, thought it unjust to violate the right which every owner of a sláve had to his service; and therefore every person who at the time of passing the act was a slave, was to remain a slave, unless his owner omitted to register him, on or before the 1st day. ofNovember next ensuing. 2d.'That it was not supposed there could, be a complete right of property in a person not in existence, and theréfore as tp the children of persons born after the passing of the act, there was no injustice in making such dispositions as should be judged expedient. 3d. That children born after the passing of the act were, (by the tenth section,) to be deemed free, because it is there declared,, that all persons except the ne- *445 groes and mulattoes, who are registered as aforesaid, shall be deemed free, and none were ordered before to be registered, but those who were living, and slaves or servants for life, or till the age of thirty-one years, at the time of the passing of this act. 4th. That the children of those who were slaves or servants for life at the time of the passing' of the act, born after the passing of the act, should be servants til! the age of twenty-eight years, in the manner, and on.the conditions, whereon servants bound by indenture for four years might be retained or Jiolden. Now, from these different'provisions, I think it follows,,that it was not intended to impose a servitude till.the age of twenty-eight years,-on any except the child of a person who was a slave at the passing of the law'. Such child was born free,, subject to the said temporary servitude; and its issue could not be held to any servitude, u.nless it can be shown, (which has not been contended for,) that the issue of servants bound by indenture for four years were subjéet to servitude; for both were to be held in the same manner, and on the same conditions. But the counsel for the plaintiff in error relies on that part of.the fourth section, by which.it. is provided that every negro and mulatto child born after the passing of the act, who would, in case the act had.not been made, have, been a servant for life or slave, was to be a servant till the age of .twenty-eight years. To1 construe these words in their greatest extent, would lead to an extreme, which is confessed to be beyond the intent of the law. It was granted, that the child of a'servant till the age of twenty-eight years, born after the mother’s time of servitude expired, would not be subject'to any servitude, and yet such child would hav.e been a slave, if the act had not been made. So the child of a slave, who had absconded from another state, begotten and born in Pennsylvania, would be subject to- servitude till the age of twenty-eight, contrary to the decision of this court in the case of The Commonwealth v. Halloway, 2 Serg. & Rawle, 305. So, if the owner abandoned the child, over which he-had a right of service until the age of twenty-eight years, and such child was bound out by the overseers of the poor, and had issue, such issue would be liable to a servitude to the former owner of its parent, till the age of twenty-eight years. Other cases might be put, of the same nature, in which no- one has ever .conceived that a child was liable to servitude till the age of twenty-eight, although it would h'ave been a slave, if the.aet of 1780 had not passed. It is clear, therefore, that the general expressions, ‘(who would, in case .this act had not been made, have been a' servant for life,, or slave,” must be restrained and modified in such a manner- as to answer the intent of 'the act, as it appears from an examination and comparison of its different parts; It' may be remarked, besides, that the construction insisted on by the plaintiff in error, would in future times be attended with insuperable difficulty. ■ If the operation of the law is confined to the children of persons who *446 were slaves on" the 1st of March, 1780, it will be easy to know whether such children would been slaves, if the law had not been made. If the parent remained a sfeve when the child was born, it is certain that the child would have been a slave, if the law had not been made. But if the parent had been manumitted before the birth of the.child, then the child would not have been a slave, although the law had not been made. But, in the case of1 a child to be born one hundred years hence, who can tell whether that child would have' been a slave, if the act of 1780 had not .beeh made? It would be impossible to ascertain that, because it would be impossible to know, whether, if slavery had not been abolished, one of the ancestors of such child might, not have been' manumitted, and then it would not have been a slave.
It was supposed, in. the argument of this cause, that, inasmuch as the owner of a,servant till the age of twenty-eight, would be subject to some loss of service of the parent, and great expense for the maintenance of the child, (in case such servant sho.uld have-a child during its time of servitude,) that, it was the intent of the law, to compensate the owner, by giving him' the service of the ■child till the age of twenty-eight. But I do not feel the force' of this argument;' because the father of the child is bound to support it, if to be found, and able, but, if not, it may be given up to the overseers of the poor, who must provide'for it; and for that purpose have authority to bind it out. I am aware that different constructions have been put upon the act of-1780, by gentlemen respectable for their learning. Some have held the opinion to which I incline; others the contrary. Neither will I undertake to say, that the subject is free from difficulties, the act not being drawn with such clearness as could be wished.' But I think the meaning which- I give.to it is most agreeablfe to the general spirit, and well justified by the words of the law — that is to say, that no child can be held to servitude till the age of. twenty-eight years, but one whose mother was a servant for-life, or a slave at the time' of its birth.
• The judgment of the Court of Common Pleas is to be affirmed.
Judgment affirmed.